■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EPIFANIO SANTIAGO, Appellant.—Judgment, Supreme Court, New York County (Alfred Kleiman, J.), rendered May 23, 1991, convicting defendant, after trial by jury, of robbery in the first degree and robbery in the second degree and sentencing him to concurrent terms of imprisonment of 6 to 12 years on the first degree charge and 4 to 8 years on the second degree charge, unanimously reversed, on the law, and the matter remanded for a new trial.

Defendant was convicted of having committed a knifepoint robbery, with an unapprehended accomplice, at approximately 2:20 P.M. on April 23, 1990. The evidence of identification consisted solely of the testimony of the complaining witness, who, in addition to identifying defendant at trial, testified to having identified him in a lineup six weeks after the crime.

Defendant presented an alibi defense through the testimony of his girlfriend, Mabel Cobin, who testified that on the date in question she had had a baby shower for herself at her parents' house on West Fourth Street and that defendant had been with her, helping to prepare for the party, from noon to 3:00 P.M. He did not attend the party, which commenced at

3:15, but remained in the bedroom while it was going on. At trial, Ms. Cobin could recall the full names of only two of the eight or nine guests. Other than these two, who had been friends of hers for some time, the guests were all women whom she knew from her prenatal class.

After the defense rested, the prosecution requested that the court deliver a missing witness charge as to the two guests Ms. Cobin had been able to name. During the colloquy that ensued, defense counsel stated that one of the young women was mentally unstable and essentially unavailable and that the other one, Ms. White, had been requested to testify but had refused to do so unless she were subpoenaed. Counsel also noted that the prosecution had been given the women's addresses. The prosecutor argued that the women should be considered to be under the defendant's control because they could be expected to testify favorably to the defendant. After offering defense counsel a one day adjournment to seek to obtain the witnesses' presence, which counsel declined, the court determined that it would give a missing witness charge as to White. The following language was thereupon included in the court's charge to the jury: "[T]he law permits, doesn't require, it permits you to infer if you believe it proper to do so, that if [Ms.] White had been called as a witness by defendant and had testified, her testimony would not have supported the testimony of Mabel Cobin on those issues. You may, again, so infer only if you are satisfied that [Ms.] White was under the control of the defendant and was available to be called by the defendant if he had wished to do so. When I say, 'Control,' a person is under control under the law when * * * she * * * is favorable to him or under the influence of one party, and would be hostile to the other party. That's what control means." We find that the court erred in giving this charge and that the conviction must therefore be reversed.

The rationale underlying the delivery of a missing witness charge is " 'that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable'." (People v Gonzalez, 68 NY2d 424, 427, quoting Graves v United States, 150 US 118, 121.) Thus, in order to justify a missing witness charge, the party requesting such charge must first make a prima facie showing that the witness is available to testify, is "knowledgeable about a material issue" and is under the control of the opposing party (People v

*Gonzalez, supra,* at 427). In this case, we find that the prosecution failed to establish either that the witness in question could offer material testimony or that she was under the defendant's control.

According to Ms. Cobin's trial testimony, which was the only source of information offered by the prosecution as to Ms. White's knowledge of the relevant issues, Ms. White had no opportunity to see defendant at the time the crime was committed, i.e., 2:20 P.M. Moreover, Ms. Cobin's testimony did not demonstrate, and the prosecutor offered no other basis to believe that, after Ms. White arrived at the party sometime after 3:15 P.M., she had any reason to know whether the defendant was present in the bedroom of the apartment or not. At best, Ms. White's testimony could only have served to corroborate Ms. Cobin's statement that a baby shower had taken place. This would have been of no value in establishing defendant's presence in the apartment at 2:20 P.M., thereby supporting his alibi defense *(see, People v Dianda,* 70 NY2d 894; *People v Williams,* 112 AD2d 177, 178).

As noted, in addition to materiality, the party requesting a missing witness charge is required to show that the witness is both available and under the opposing party's control. "Control", in this context, does not mean physical control, but, rather, refers to a situation in which a witness, "although theoretically 'available' to both sides, is favorable to or under the influence of one party and hostile to the other" *(People v Gonzalez,* 68 NY2d, *supra,* at 429). Such a situation is found where there exists such a relationship "in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor" *(supra,* at 429; *see also, People v Vasquez,* 76 NY2d 722). In the case at bar, the prosecution failed to offer any evidence that defendant even knew White. While Cobin's testimony established that she and White had been friends for two years, there was no evidence as to the depth of this friendship, and it is mere speculation to draw from this fact that White had a sufficient relationship with the defendant as to make it "natural" for him to call her to testify. Indeed, counsel's statement that White had refused to testify unless subpoenaed appeared to belie any implication that White was under the influence of defendant.

Under the circumstances of this case, we are unable to find that the delivery of this charge was harmless error *(see, People v Crimmins,* 36 NY2d 230). It is clear that, while the value to the defense of any potential testimony by Ms. White establishing that there had been a party would have been slim, the

reverse implication permitted by the charge, i.e., that Ms. Cobin had fabricated the existence of the party, cast serious doubt on her credibility as a witness in every respect. Although the prosecution presented other evidence casting doubt on Ms. Cobin's testimony, it cannot be said that, absent the negative inference permitted by the erroneous charge, there was not a significant probability that the jury would have accepted her testimony. Concur—Ellerin, J. P., Wallach, Ross and Kassal, JJ.